636 So.2d 827 (1994)
PHYSICIANS PROTECTIVE TRUST FUND, et al., Petitioners,
v.
W. Glenn OVERMAN and Betty L. Overman, his wife, Respondents.
No. 94-996.
District Court of Appeal of Florida, Fifth District.
May 4, 1994.
Ralph O. Anderson, Hicks, Anderson & Blum, P.A., Miami, for petitioners.
No appearance for respondents.
GRIFFIN, Judge.
Petitioners seek the emergency issuance of a writ of certiorari to quash an order of sanctions for failure to appear at mediation in compliance with Rule 1.720 of the mediation rules and for failure to comply with orders of the lower court setting mediation. Fla.R.Civ.P. 1.720.
The action below is a medical malpractice lawsuit brought by plaintiffs, W. Glenn and Betty Overman, against Defendants, Marc E. Harr, M.D., Dr. Harr's professional association and Ormond Beach Memorial Hospital. Physicians Protective Trust Fund ["PPTF"] is a self-insured trust, established under section 627.357, Florida Statutes, which provides Dr. Harr with professional liability coverage in the amount of $250,000 under an Indemnity Agreement.
On September 28, 1993, the lower court entered an Order Appointing Mediator in this case, and on October 5, 1993, entered an Order Referring Case to Mediation. Both the October 5 order and Addendum A to the September 28 order provided in part that "if insurance is involved in the action, the insurance carrier shall send a company representative who has full and absolute authority to resolve the matter for the lesser of the policy limits or the most recent demand of the adverse party." Shortly before the scheduled mediation, it was postponed until March 30, 1994. The reason as described by respondents' counsel was:
[B]ecause the defense announced at the time of the first scheduled mediation that the  that the insurance company representative would be coming to mediation with absolutely no money because he had no authority and so, therefore, mediation would be a waste of time, to use their words. And for that reason, we postponed the mediation until March 30th, I think the date was, and we all showed up at the mediation site at that time after receiving assurances from Mr. Taraska, the defendant's lawyer, the day before and [in the lower court's presence] that the company was ready to mediate.
The petitioners' version was:
The reason it was postponed initially was because the information that had been produced *828 to that time did not give the evaluators in this case any reason to resolve the case and they determined not to do that.
We indicated to Ms. Phillips at that time that if the matter were postponed, it would give additional time for evaluation.
A mediation was held on March 30, 1994. As described by counsel for respondents, the following transpired:
MS. PHILLIPS: [W]e started at eleven, this mediation, and I  we went through the regular steps of the mediation, I gave my statement, Mr. Noecker gave his, Mr. Hill gave his and the mediator then began meeting with the defense representatives ... [T]he next information I received was at three o'clock that afternoon, some four hours later, when the mediator came to me and said that after he talked to Dr. Harr's personal attorney, with Mr. Hill, with Mr. Noecker, and Mr. Childers, the representative of PPTF, told him that he had absolutely no authority to settle the case, meaning zero money.
The mediator adjourned the mediation because the defendant had no dollar authority. Respondents filed a motion in the lower court for sanctions pursuant to Rule 1.720(b). At the hearing on this motion, the lower court took testimony from the independent adjuster hired by PPTF to handle the claim who appeared for the insurer at the mediation. When asked by the lower court if he could be given dollar authority by the PPTF to settle a claim in mediation, the following exchange occurred:
MR. CHILDERS: They can give it to me.
THE COURT: Did you have any when you came down here?
MR. CHILDERS: Well, in their  in their review and analysis of this case, based on their expert input and their experts' advisement from the very beginning of the case and as the case developed and some of the best experts they felt nationally who have reviewed the case, they did not... .
THE COURT: Do you know how these  you don't know, you couldn't have settled the case? Could you? Did you have any authority when you arrived down here Friday?
MR. CHILDERS: Their intent was to try the case.
THE COURT: What authority did you have when you arrived here Friday?
MR. CHILDERS: My authority was that they wanted us to listen to the case.
THE COURT: Money, what kind of money were you authorized to offer by settlement?
MR. CHILDERS: Their intent was not to offer any money unless something changed in the course of the case that would tell them to do something different.
THE COURT: Were those your instructions?
MR. CHILDERS: Yes, sir.
Counsel for Dr. Harr then explained why sending someone with no settlement authority was fully compliant with the court's orders and the mediation rule:
MR. TARASKA: In this case, the board met, decided the case, determined there was nothing in the facts of the case to warrant resolution of the case and gave their authority to Mr. Childers which has authority not to resolve the case unless something happened at mediation that changed his  [mind]... .
I looked at the statute and the rule which says just the words full authority. And the board did give its full authority in this case to Mr. Childers which is what they decided he should do.
THE COURT: He had no authority for nothing.
MR. TARASKA: That was the board's decision. And had they been there that day, Judge, that would have been their decision, too.
THE COURT: Well, why didn't someone say, look, this board has decided there's going to be no settlement in this case, there's no point in going, there's no point in making those people go through the travail and turmoil of preparing just as you did 
MR. TARASKA: Yes, sir.
THE COURT:  and sending them down here and taking up a mediator's time if  if it's just going to be flat-out no settlement, no authority, no nothing?

*829 ... .
MR. TARASKA: [W]e do come in good faith because Mr. Childers is there to evaluate anything that Ms. Phillips has to offer that is different or new than what was known in the case and, in fact, he did communicate back with his corporation that afternoon and informed them that nothing new had occurred to change... .
When asked by the lower court who evaluated and made the settlement decisions on such cases, both the adjuster and counsel identified the Board of Trustees of PPTF.
To assure full authority to settle and as a sanction for noncompliance with the rule and its orders on March 30, the lower court ordered the members of the Board of Trustees of PPTF to attend the resumption of the mediation. Upon learning of the lower court's intention to require the entire board to appear, counsel represented that the board was willing to issue a resolution that would "irrevocably" confer on a high-ranking PPTF employee "full authority to enter into complete negotiations on the case," and "total and complete authority to settle this case all the way up to and including the entire policy limits at his sole discretion, with no further consultation... ."[1]
Petitioners expressly accept the court's finding of noncompliance with the appearance requirements of mediation but argue that requiring the entire board to attend mediation is "totally unwarranted" and "cannot be squared with the letter or spirit of Rule 1.720 and the lower court's mediation orders." Petitioners' legal argument appears to be grounded in the notion that this offer to send a representative with full authority satisfied the requirements of the rule and that the lower court had no power to order the board to appear as a sanction.
Petitioners seek emergency review of this order on two grounds: (1) that it represents a departure from the essential requirements of the law and (2) that the required appearance at the mediation on May 7 in Daytona Beach will work an unreasonable hardship on several of the members of the Board of Trustees.
As to the contention that the challenged order was beyond the power of the lower court to make, in light of our review of the proceedings below, we find no departure from the essential requirements of law in the lower court's order and decline to interfere by certiorari. As to the claim of hardship, some of these may have merit; however, these matters have not yet been presented to the lower court. The lower court is directed to conduct a hearing prior to the currently scheduled date of May 6 or postpone the mediation. The right of these individuals to be heard after receiving notice of the court's order implies a meaningful opportunity to be heard. A May 6 hearing for several of these individuals may come too late. We also note that respondents have expressed a willingness to accept an alternative solution if the court, in its sound discretion, elects to provide relief from its sanction.
PETITION DENIED.
PETERSON, J., concurs.
HARRIS, C.J., concurs specially, with opinion.
HARRIS, Chief Judge, concurring specially:
I agree that sanctions are appropriate because petitioner failed to comply with the requirements of Rule 1.720(b) in that it failed to send a "representative who had full authority to settle without further consultation.[1] I believe, however, that the sanction of requiring all of the trustees to attend the next mediation hearing is unnecessarily harsh and should have been framed in the alternative  come yourself or send someone with full authority.
Petitioner (the Board of Trustees of the insuring trust) had determined that Plaintiff's action was meritless and had decided to reject any settlement, as was its right. Had *830 the Trustees appeared en masse at the mediation hearing, they could not be punished for refusing to retreat from this position. Under the present rule, however, if the Board decides, based on the issue of liability, not to settle even for a token amount, it must appear through all of its trustees.[2] In order to avoid this harsh reality, the Board has now "authorized"[3] a senior representative to attend on its behalf with full authority to settle within policy limits. I would urge the court to accept this alternative.
NOTES
[1] Petitioners appear finally to have understood what it means to send someone to mediation with full authority to settle.
[1] Had the representative testified that he had the same authority as the trustees to settle, i.e., full authority but no inclination, we would not be considering the issue now.
[2] If the trustees truly believe that settlement for any amount would be contrary to the best interest of the trust, to delegate to a representative the authority to settle would appear to be a violation of their oath.
[3] One can only guess at what the criteria might be to justify the exercise of this authority.